IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Lloyd Turentine, , | ) |
| | ) No. 13 C 05218 |
| Plaintiff, | ) |
| | ) Judge Edmond E. Chang |
| v. | ) |
| | ) |
| City of Chicago, City of Chicago Department | ) |
| of Police and Chicago Police Superintendent | ) |
| Garry McCarthy | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant the City of Chicago (the "City"or "Defendant"), by and through its attorney, Stephen R. Patton, Corporation Counsel for the City of Chicago, hereby files this motion to dismiss Plaintiffs' Complaint ("Complaint" or "Compl."). In support hereof, Defendant shows as follows.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Complaint and assumed true for purposes of this Motion.

On May 13, 2011, Plaintiff Lloyd Turentine ("Plaintiff") was visiting relatives at 6111 S. Indiana, Chicago, when he was arrested and charged with firearms violations under both state and Chicago municipal law. Compl., ¶¶ 4, 8, 9. He was arrested pursuant to 720 ILCS § 24-1 for alleged unlawful possession of firearms in his vehicle; and pursuant to Chicago Mun. Code § 8-20-140(a) for allegedly possessing firearms in a residence without a firearms registration certificate. *Id*., ¶¶ 8, 9. At the time of Plaintiff's arrest, the Chicago Police Department ("CPD") seized his firearms, specifically: (1) Kel-Tec Model PLR-16 5.56 Cal., Serial # P6200; (2) Kel-Tec Model Sub-2000 .40 Cal, Serial # E7615; and (3) Kel-Tec Model SU-16, 5.56 Cal., Serial # M3190. *Id*., ¶¶ 11, 17.

At all relevant times, Defendant was a private security contractor employed by Kates' Detective & Security Agency, and possessed a valid Firearm Owner Identification Card ("FOID"), and a Firearms Control Card from the Illinois Department of Financial and Professional regulation. *Id.*, ¶¶ 11, 13, 15. Pursuant to Chicago Mun. Code § 8-20-140(a), persons licensed as private security contractors, security guards, private detectives, or employed by an agency certified as such by the Department of Professional Regulation are exempt form the firearm certification requirements. *Id.*, ¶ 12.[1] Defendant informed CPD that he was a properly licensed private security contractor and thus exempt from the certification requirements prior to his arrest. *Id.*, ¶ 16. Defendant was found not guilty of all charges on September 29, 2011. *Id.*, ¶ 10. CPD has refused to return Plaintiff's firearms even though he has demanded their return. *Id.*, ¶ 18.

Based on these events, Plaintiff alleges that the CPD and Superintendent McCarthy have violated his constitutional rights protected under the Fourteenth Amendment, as well as other state law rights. He brings five claims: (1) violation of his procedural due process rights for failing to provide a procedure for return of his firearms (Count I); (2) an action for conversion of his property under Illinois law (Count II); (3) an action for replevin under Illinois law (Count III); (4) violation of his rights to be free from arrest and prosecution absent probable cause, unreasonable and illegal searches and seizures, as well as infringing on his First Amendment rights (Count IV)[2]; and (5) violation of his Second Amendment rights. Plaintiff seeks both punitive and compensatory damages,

---

[1] This exemption is actually found in Chicago Mun. Code § 8-20-140(f)(6). *See* Exhibit A.

[2] Plaintiff captions this claim as a violation of his 14th Amendment rights, and it is unclear whether he means to pursue claims for violation of substantive due process, the Fourth Amendment, and/or the First Amendment. Regardless, there is not a single allegation in his Complaint which would support a claim under the First Amendment.

a declaratory judgment and an order that the CPD institute a procedure for citizens to return their confiscated firearm, and the return of his firearms. Compl., p. 9.

## LEGAL STANDARDS

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. FED. R. CIV. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pled allegations, construing all such allegations in the light most favorable to the plaintiff, and drawing all reasonable inferences in favor of the plaintiff. *Gibson*, 910 F.2d at 1520-21. The court need not, however, strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint, nor accept legal conclusions either alleged or inferred from pleaded facts. *Nelson v. Monroe Reg. Med. Ctr.*, 925 F.2d 1555, 1559 (7th Cir. 1991).

## ARGUMENT

**I.     Plaintiff's Claims Are Barred By The Applicable Statute Of Limitations.**

Plaintiff alleges that Defendants violated his Second and Fourteenth Amendment rights, and committed the state law tort of conversion, when he was unlawfully arrested and his firearms were seized on May 13, 2011. He also includes an action for replevin under Illinois state law to recover his firearms. Because the alleged unlawful arrest and seizure occurred more than two years ago, Plaintiff is barred from pursuing his claims.

Section 1983 claims are governed by the Illinois two-year statute of limitations period for personal injury. *Shropshear v. Corporation Counsel of City of Chicago*, 275 F.3d 593, 594 (7th Cir. 2001) (federal courts apply two-year limitations period for § 1983 claims); *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001) (same). Federal law governs when the claim accrues. *Wallace v.*

*Kato*, 549 U.S. 384, 387 (2007). "[I]t is the standard rule" that a § 1983 claim accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id*. at 388 (internal citations omitted). The Seventh Circuit has developed a two-part inquiry for determining when a § 1983 claim has accrued: First, the Court must identify the injury. *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir.2004). Second, the Court must determine "the date on which the plaintiff could have sued for that injury." *Id*. Generally, that is the date the plaintiff " 'knows or should know' that her rights were violated." *Id*., citing *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir.1993).

It is well-settled that claims arising out of unlawful arrests, illegal searches or seizures, or related incidents accrue at the time the arrest or seizure took place. *See, e.g. Wallace v. City of Chicago,* 440 F.3d 421, 425-28 (7th Cir. 2006) (unlawful arrest and seizure claim accrued at time of arrest; "Individuals and attorneys who wish to preserve a claim for false arrest or similar Fourth Amendment violations should file their civil rights action at the time of arrest."); *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010) (citing *Wallace* for clear rule that claims based on illegal search and seizure or unlawful arrest accrue immediately, at time of arrest or seizure); *Mihelic v. Will County, Ill.,* 826 F. Supp.2d 1104, (N.D. Ill. 2011) (same). Likewise, due process claims – both procedural and substantive – accrue at the time the alleged property or liberty deprivation occurred. *See, e.g.*, *Hobbs v. Cappelluti*, 899 F. Supp.2d 738, 756 (N.D. Ill. 2012) (holding substantive due process claim accrued at time confession was allegedly coerced, not at time charges dismissed).

Under this clearly established law, it is indisputable that Plaintiff's claims accrued on the date of his arrest. No matter which constitutional right or amendment he invokes, the same alleged injury underlies all of Plaintiff's claims – his wrongful arrest and the seizure of his firearms that occurred

on May 13, 2011. *See* Compl., ¶¶ 11, 17. This lawsuit was filed on July 22, 2013, more than two years after the alleged injuries occurred. Accordingly, Plaintiff's federal claims in Counts I, IV, and V are time-barred and should be dismissed.

Plaintiff's state law tort claim for conversion in Count II is likewise barred by the applicable limitations period. The Tort Immunity Act (the "Act") protects local government agencies and public employees from liability arising from the operation of governmental functions. 745 ILCS 10/1-101.1. Under the Act, any civil action "against a local entity or any of its employees for any injury," other than an action "arising out of patient care" must be "commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a), (b). The Act's one-year limitations period applies broadly to any possible claim sounding in tort against a local governmental entity and its employees. *Paszkowski v. Metropolitan Water Reclamation Dist.*, 213 Ill.2d 1, 13 (2004); *Ferguson v. McKenzie*, 202 Ill.2d 304, 312 (2001); *Village of Bloomingdale v. CDG Enters., Inc.*, 196 Ill.2d 484, 489-90 (2001). The tort of conversion is clearly covered by the Act's one-year limitation period. *See* 745 ILCS 10/1-204 (defining "injury" as including "damage to or loss of property."). *See also Martel Enterprises v. City of Chicago*, 223 Ill. App.3d 1028, 1032-33 (1st Dist. 1991) (Tort Immunity Act applies to claims of conversion claim).

At most, therefore, Plaintiff's sole surviving claim is his state court action for replevin in Count III. Because Plaintiff has failed to state a federal cause of action, however, the Court should decline to extend its supplemental jurisdiction over this state law claim and dismiss Plaintiff's Complaint in its entirety. *See, e.g., Carr v. CIGNA Securities, Inc.*, 95 F.3d 544, 546 (7th Cir. 1996) (stating general rule that when court dismisses plaintiff's federal claims before trial, it should decline to exercise supplemental jurisdiction over remaining state law claims).

II. **Plaintiff Has Failed To State A Due Process Violation Against The City**

Even if Plaintiff's claims were not barred by the statute of limitations, he has still failed to state a violation of his Fourteenth Amendment due process rights in Count I. Plaintiff alleges that the City violated his due process rights because his firearms were wrongly confiscated and he was not "provid[ed] a mechanism and procedure under which one could reclaim his property." Compl., ¶ 27. Because the City does have a procedure in place to restore firearms to those citizens who are legally entitled to possess them, and because post-deprivation remedies are also available, his claim fails as a matter of law.

In procedural due process claims, "the deprivation by state action of a constitutionally protected interest in life, liberty, is not unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Doe by Nelson v. Milwaukee County*, 903 F.2d 499, 502 (7th Cir. 1990). Thus, procedural due process claims require a two-step analysis: First, the court must determine whether the plaintiff has been deprived of a protected interest; and second, the court must determine what process is due. *See, e.g., Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). The protected interest at stake can be either a property or liberty interest, but it must be based on more than "a unilateral expectation" that one is entitled to it. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. Of Education v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

As an initial matter, the City was entitled to confiscate and keep Plaintiff's firearms as a matter of law, because they are assault weapons and therefore unregisterable and illegal to possess.

6

Under Chicago Mun. Code § 8-20-170, no registration certificate for assault weapons shall be approved. And, with limited exceptions that do not apply to Plaintiff, "[i]t is unlawful for any person to carry or possess any unregisterable firearm." *Id.*, § 8-20-035.[3] Furthermore, "[a]ny firearm carried or possessed in violation of this section is hereby declared to be contraband and shall be seized and forfeited by the city." *Id*. A comparison of the manufacturer's specifications[4] for the firearms seized from Plaintiff (and as described by Plaintiff in ¶ 11), with the City's definition of the types of assault weapons banned, show definitively that the weapons seized from Plaintiff are illegal assault weapons. Specifically, the Kel-Tec Model SU-16 and Kel-Tec Model sub- 2000 are semi-automatic rifles that have the ability to accept a detachable magazine and have "a folding or telescoping stock" (Chicago Mun. Code § 8-20-010 Assault Weapon Definition (1)(I)); and the Kel-Tec PLR-16 is a semi-automatic pistol that has the ability to accept a detachable magazine and has "a barrel having a threaded muzzle and a manufactured weight of 50 ounces or more when unloaded." (Chicago Mun. Code § 8-20-010 Assault Weapon Definition (3)(ii) and (iv)). *See also* Kel-Tec Technical Specifications (published on the company's website), attached as Exhibit B. While Plaintiff conclusorily asserts that "there is no claim that such weapons are contraband per se," (Compl., ¶ 29), they are, in fact, defined as such in the plain language of the ordinance. Accordingly, his weapons are illegal to possess in Chicago and automatically subject to seizure and forfeiture, and

---

[3] The only recognized exceptions are for peace officers, members of the armed forces, or members of an organized state militia. Chicago Mun. Code § 8-20-035.

[4] The Court may take judicial notice of the manufacturer's own specifications for Plaintiff's weapons, as these caharcterisitics are not subject to reasonable dispute and "capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." *Metz v. Joe Rizzo Imports, Inc.*, 700 F. Supp.2d 983, 989 n.2 (N. D. Ill. 2010). *See also Heisner ex rel. Heisner v. Genzyme Corp.,* 2008 WL 2940811, *1 (N. D. Ill. July 25, 2008) (taking judicial notice of fact that device was "class III" medical device).

whether or not he would otherwise be entitled to claim a registration exemption for *legal* firearms is irrelevant.

Moreover, even assuming *arguendo* that Plaintiff was entitled to lawfully possess these firearms, the City does in fact have a procedure in place for such firearms to be returned. Plaintiff alleges that CPD took his property without providing him "proper notice and an opportunity for a hearing subsequent to the seizure." Compl., ¶ 30. Pursuant to Chicago Mun. Code § 8-20-250, the City is authorized to seize firearms "carried or possessed in violation of this chapter or any applicable state or federal law." *Id*., attached hereto as Exhibit B.[5] When those weapons are taken as evidence for a criminal case, and when the proceeding concludes and "a determination is made that the firearm or related property is no longer needed for evidence or further investigation, the legal owner may be entitled to the return of that property." CPD Special Order S07-02, attached hereto as Exhibit C. The Court may take judicial notice of these published and publically available (on the internet) police orders. *See, e.g., Driebel v. City of Milwaukee*, 298 F.3d 622, 630 n.2 (7th Cir. 2002) (court could take judicial notice of rules and regulations promulgated by police chief and published in manual); *Albrecht v. Metropolitan Pier and Exposition Authority*, 338 F. Supp.2d 914, (N.D. Ill. 2004) (court took judicial notice of publicly available policies of state agency); *U.S. v. Davis*, Case No. 11 CR 62, 2013 WL 1628155, *7 (N.D. Ill. April 15, 2013) (judicial notice of contents of Fraternal Order of Police Handbook); *Polnitz v. Peoria County*, Case No., 08-1035, 2009 WL 311157, *2 (C.D. Ill. Feb. 4, 2009) (judicial notice of grievance produce in Peoria County Jail Policies and Procedure manual).

Special Order S07-02 provides two methods for recovery of firearms after they have been

---

[5] Plaintiff has not challenged the constitutionality of this provision and thus it is not at issue.

seized. First, the property owner may obtain a court order in accordance with the provisions for the return of property taken into custody. *See* Exhibit C, p. 2. Second, if a court order cannot be obtained, he may recover his firearms by issuance of a Property Release Order form, which is given to the property owner after he has shown that: (1) he has a valid FOID card and firearm registration (unless he shows he is exempt); (2) the weapon is not contraband; (3) a court of law is not expected to determine the disposition of the firearm; and (4) there are no outstanding warrants or other criminal history which would preclude the individual from legally possessing the firearm. *Id*. If these conditions are met, CPD staff authorizes the return of the weapons to the lawful owner. *Id*. These procedures provide ample methods for Plaintiff to secure the return of his weapons seized by CPD, provided he is legally entitled to possess them. And although Plaintiff alleges that he has "demanded their return" (Compl., ¶ 18), he has *not* alleged that these procedures are inadequate, or that he actually followed these procedures or satisfied these conditions. *See, e.g., Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003) ("we do not allow a plaintiff to claim that she was denied due process just because she chose not to pursue remedies that were adequate.").

Furthermore, Plaintiff is also precluded from bringing a due process claim because he has state law remedies available to him for deprivation of property. *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (where state law provides adequate post-deprivation remedies for deprivation of property, no constitutional violation arises); *Greco v. Guss*, 775 F.2d 161, 169 (7th Cir. 1985) (access to state tort claim of conversion precluded plaintiffs from using § 1983 to compensate them for injuries). Assuming *arguendo* that Plaintiff followed the procedures above, satisfied the requirements for the return of his firearms, and that CPD still refused to return them (again, facts he has failed to – and cannot – allege), he has adequate state law tort remedies available to him. Indeed,

9

Plaintiff concedes as much by including those state law claims – conversion and replevin – in this case. *See, e.g., Tucker v. Williams,* 682 F. 3d 654, 661 (7th Cir. 2012) (no federal due process violation where backhoe was seized because adequate post-deprivation procedures available; "he could have brought a claim for conversion or replevin."); *Holstein v, City of Chicago*, 29 F.3d 1145, 1148 (7th Cir. 1994) (Illinois replevin law provides due process for those seeking return of towed vehicles); *Stewart v. McGinnis,* 5 F.3d 1031, (7th Cir. 1993) (no due process claim for recovery of property taken and destroyed from prisoner during shakedown where state law tort remedies available); *Manos v. Caira,* 162 F. Supp.2d 979, 990-91 (N.D. Ill. 2001) (firearm owner whose weapons were seized as evidence in trial could use state law remedy of replevin to seek return and thus police officials did not violate due process rights by keeping weapons after trial concluded).

For all of these reasons, Plaintiff has not stated a violation of his due process rights and Count I should be dismissed.

### III. Plaintiff's Claims Against Superintendent McCarthy Must Be Dismissed.

It is unclear from Plaintiffs' Complaint whether he purports to sue Superintendent McCarthy solely in his official capacity or also in his individual capacity. Either way, Superintendent McCarthy is not a proper defendant and should be dismissed.

First, a suit against a public official in his official capacity is a suit against the government entity of which he is an agent. *See Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001). Thus, because Plaintiff has also sued the City, any claim against Superintendent McCarthy in his official capacity is redundant. Second, Plaintiff does not allege that Superintendent McCarthy took any direct action with respect to him or his arrest. Rather, Plaintiffs assert only that McCarthy violated his constitutional rights because he "has instituted a policy for the Chicago Police Department

whereby [CPD] are to make it as difficult as possible, if not practically impossible, for a person to retrieve firearms which have been confiscated . . . " Compl., ¶ 20. This allegation simply does not support a basis for liability. To be held liable for a § 1983 claim, a defendant must be "personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995); *Kelly v. Municipal Courts of Marion Cty.*, 97 F.3d 902, 909 (7th Cir. 1996) (individual liability under §1983 requires finding that defendant caused deprivation at issue). Thus, without allegations of specific action taken by Superintendent McCarthy related to this particular Plaintiff and his arrest and seizure, he cannot be held liable for such generalized conduct as implementing or enforcing laws, customs, practices, or policies. And Plaintiff has not alleged any conduct by Superintendent McCarthy that links him to the purported constitutional violations in this case: Plaintiff does *not* allege that Superintendent McCarthy was present at or involved with his arrest, or that he directed the arrest and seizure of Plaintiff's firearms (much less that he was even aware of it). Because he has not alleged any real or palpable nexus between Superintendent McCarthy and the constitutional violation, Plaintiff cannot maintain his §1983 claims against him.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and dismiss Counts I, II, IV and V with prejudice, and dismiss Count III without prejudice to Plaintiff's right to seek redress in state court, and for all other relief the Court deems just.

Mardell Nereim  
Rebecca Hirsch  
City of Chicago Dept. of Law  
30 N. LaSalle St., Suite 1230  
Chicago, Illinois 60602  

Respectfully submitted,

Stephen R. Patton, Corporation Counsel  
for the City of Chicago

312-742-0260                                          By: /s/Rebecca Hirsch
                                                           Assistant Corporation Counsel

August 30, 2013

## CERTIFICATE OF SERVICE

    I, Rebecca Hirsch, an attorney, certify that on this 30th day of August, 2013, I caused the foregoing **Defendant City of Chicago's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Complaint** to be served by electronic case filing (ECF) on the following counsel:

    Joel A. Brodsky
    8 S. Michigan Ave., Suite 3200
    Chicago IL 60603
    (312) 541-7000
    jbrodsky@joelbrodskylaw.com

                                                          /s/ Rebecca Hirsch