**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | | |
|---|---|---|
| Lloyd E. Turentine | ) | |
| | ) | |
| Plaintiff, | ) | NO. 13 C 05218 |
| | ) | |
| | ) | Judge Edmond E. Chang |
| vs. | ) | |
| | ) | |
| | ) | |
| City of Chicago, City of Chicago | ) | |
| Department of Police and Chicago Police | ) | |
| Superintendent Garry McCarthy | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Lloyd E. Turentine, by his attorney, Joel A. Brodsky, responds to Defendants'

Motion to Dismiss and respectfully sets forth the following:

## INTRODUCTION

Defendants' Motion to Dismiss should be denied because Plaintiff filed his complaint

within the two year statute of limitations and presents a valid due process violation claim.

Defendants misconstrue what this case is all about. This case is not about the Plaintiff's

wrongful arrest and the wrongful seizure of his firearms; rather it is about the subsequent

wrongful retention of his firearms by the Defendants. Because the Defendants conflate the

issues, they believe Plaintiff's claims are barred by the statute of limitations citing primarily case

law developed from wrongful arrest cases. However, because this is not a wrongful arrest case,

Plaintiff's claims are not time-barred.

First, Defendants ignore the continuing nature of their alleged due process violations.

Second, Defendants improperly calculated the accrual date of Plaintiff's cause of action. Third,

Defendants misguidedly believe Plaintiff's firearms are contraband. Fourth, Defendants

incorrectly argue Plaintiff does not state a cause of action under the due process clause. Fifth, Defendants wrongly assume existing state law remedies are adequate to cure an alleged due process violation. Sixth, Defendants erroneously argue that Chicago Police Department Superintendent Gary McCarthy is not a proper party to this suit.

Finally, it is important to note that for purposes of this motion, the court is to take as true all of the Plaintiff's well plead facts, and construe them in a light most favorable to the Plaintiff.

> A complaint is properly dismissed pursuant to Fed.R.Civ.P. 12(b)(6) when the plaintiff can prove no set of facts in support of his or her claim that would entitle plaintiff to relief. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). At this stage of the proceedings, we accept as true all well-pleaded facts contained in the complaints, and we construe all reasonable inferences in favor of the plaintiffs. *__Jang v. A.M. Miller & Assocs.__, 122 F.3d 480, 483 (7th Cir. Ill. 1997)*

> We construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferenes in her favor. *__Tamayo v. Blagojevich__, 526 F.3d 1074, 1081 (7th Cir. Ill. 2008).*

For the foregoing reasons, Plaintiff's due process claims are not barred by the statute of limitations and Defendants' Motion to Dismiss should be denied.

## I.     Plaintiff's Complaint is Not Time-Barred Because Plaintiff Alleges a Continuing Due Process Violation

Defendants' Motion to Dismiss should be denied because Defendants ignore the ongoing, continuing nature of their due process violation. In Illinois, the continuing tort theory has been applied in a myriad of cases including those involving violations of constitutional rights. *see* *__Feltmeier v. Feltmeier__, 333 Ill. App. 3d 1167, 1178-1179 (Ill. App. Ct. 5th Dist. 2002)*; *also see* *__McGee v. Snyder__, 326 Ill. App. 3d 343, 352-53, 760 N.E.2d 982, 990-91, 260 Ill. Dec. 209 (2001)* (court found continuing tort in civil rights action).

In order to show a continuing violation, a plaintiff must establish a defendant municipality maintained a policy or custom which the directly caused of a constitutional violation. *__Woodward v. Corr. Med. Servs. of Ill., Inc.__, 368 F.3d 917, 927 (7th Cir. 2004).*

Then, if but for the defendant's actions the plaintiff would not have suffered an injury, the defendant municipality is liable to the plaintiff. **_Id._ at 929**.

A plaintiff can show his or her injury through direct as well as indirect evidence, and the courts are allowed to infer from this evidence whether or not a violation of plaintiff's constitutional rights has taken place.

> A municipality….can be held liable if the injury alleged is the result of a policy or practice, **_or_** liability can be "demonstrated indirectly 'by showing a series of bad acts and inviting the court to infer from them that the policy-making level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned . . . the misconduct of subordinate officers.'" **_Woodward,_ 368 F.3d at 927**

Also, failing to abide by a policy or custom which is constitutional is viewed by the courts as the same thing as maintaining an unconstitutional policy or custom.  The court in _Woodward_, addressing an 8th Amendment claim, found the failure of the defendant to follow written and constitutional procedures directly injured the plaintiff and thus defendant was liable under 42 U.S.C. § 1983 for violating plaintiff's constitutional rights.  As the Court stated in _Woodward_,  "It is when execution of [an entity's] . . . custom . . . inflicts the injury that the [entity] . . . is responsible under § 1983." _Monell v. Department of Social Servs._, 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). Here, a reasonable jury could find that CMS's custom of repeatedly failing to follow proper procedures led to Farver's successful suicide attempt." **_Woodward,_ 368 F.3d at 927.**

A plaintiff is not required to show that the constitutional rights of other individuals are also being violated by the defendant.  The Supreme Court held evidence of just one violation of an individual plaintiff's constitutional rights is enough as long as there is a nexus between the municipality's policy and plaintiff's injury.

"Finally, we cannot leave unaddressed CMS's claim that "the plaintiff's failure to introduce evidence of any suicide at the Lake County jail besides Farver's dooms plaintiff's efforts to prove a custom or practice." CMS does not get a"one free suicide" pass. The Supreme Court has expressly acknowledged that evidence of a single violation of federal rights can trigger municipal liability if the violation was a "highly predictable consequence" of the municipality's failure to act. *See Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 409. Here, there was a direct link between CMS's policies and Farver's suicide." ***Woodward,*** **368 F.3d at 929**

Further, a plaintiff's single allegation of a policy which violates one's constitutional rights is sufficient to overcome a motion to dismiss.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting Iqbal, U.S. at, 129 S. Ct. at 1949)); McDonald v. Wexford Health Sources, No. 09 C 4196, 2010 U.S. Dist. LEXIS 78276, 2010 WL 3034529, at *3 (N.D. Ill. Jul. 30, 2010) (denying Wexford Health's motion to dismiss where the plaintiff alleged a similar policy). Moreover, the allegation that Wexford Health pressures medical care providers to deny medical care is specific enough to alert defendants to the policy he alleges infringes on his constitutional right. The court concludes that Brown's allegations regarding Wexford Health are sufficient for the purposes of Federal Rule of Civil Procedure 8(a). Wexford Health's motion to dismiss is denied. ***Brown,*** **2010 U.S. Dist. LEXIS 103992, at 27**

Likewise, the testimony of a single individual is sufficient to establish plausibility of a continuing violation. In *Woodward*, the court found testimony from the plaintiff's expert was enough to get the case to a jury. ***Woodward,*** **368 F.3d at 920** (judge rejected evidentiary challenges to the testimony of plaintiff's expert, finding that "his [expert's] testimony alone, in my view, would have supported the jury's verdict.").

Once a continuing violation of plaintiff's constitutional rights is established, its effect is to delay the running of the statute of limitations until the completion of defendant's final transgression.

"[W]here a tort involves continuing or repeated injurious behavior, 'the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease.' " ***Pavlik v. Kornhaber,*** **326 Ill. App. 3d 731, 745**

The statute of limitations does not begin to run until the last day of the negligent treatment. ***Cunningham v. Huffman*, 154 Ill. 2d at 406, 609 N.E.2d at 325, 182 Ill. Dec. 18 (1993)** (in the medical malpractice context)

In *McGee v. Snyder*, 326 Ill. App. 3d 343, 352-53, 760 N.E.2d 982, 990-91, 260 Ill. Dec. 209 (2001), the Second District Appellate Court determined that in a civil rights setting, the denial of good-conduct credits was a continuing tort and that the statute of limitations was tolled. ***Feltmeier*, 333 Ill. App. 3d at 1179**

In this case, Defendants' violation of Plaintiff's rights as alleged in the complaint is sufficient to show an unconstitutional policy or custom and thus a continuing civil rights violation. Plaintiff was acquitted of all criminal charges. Compl., ¶10. Next, the State filed a"Motion to Confiscate and Destroy" the firearms, which was denied. (Exhibits "A" and "B"). Next, the Plaintiff requested the return of his firearms and was denied their return. Comp. ¶18 Despite all of this, the Plaintiff's firearms are still in Defendants' possession. Compl., ¶18. Finally, Plaintiff alleges that this failure to return firearms to those entitled to them is the policy of the Chicago Police Department. Compl., ¶20. It follows from this series of acts perpetrated by Defendants that this court can conclude Defendants maintain an unconstitutional policy of refusing to relinquish firearms to acquitted defendants, and that this policy or custom is directly injurious to the Plaintiff's constitutional rights. Alternatively, this is evidence that Defendants were not following any supposed constitutional policy put in place for the return of firearms to innocent citizens.

Just as in *Woodward*, Plaintiff is not required to show more than this one violation. Defendants do not argue that the violation of Plaintiff's constitutional rights was a one-time violation and not reflective of the Chicago Police Department custom of not returning firearms. This single violation of Plaintiff's constitutional rights is enough.

The statute of limitations will not be offended by allowing Plaintiff to bring his claim. Because of the continuing nature of Defendants' violation (The Defendants' have not yet

returned Plaintiff's firearms) the statute of limitations on Plaintiff's claim has not begun to run. For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

**II.      Alternatively, Plaintiff's Complaint is not Time-Barred Because Defendants Improperly Calculated the Accrual Date of Plaintiff's Cause of Action**

Even if the court does not find a continuing violation of Plaintiff's constitutional rights, Defendants improperly calculated the accrual of Plaintiff's cause of action, starting the running of the limitations period upon Plaintiff's arrest on May 13th, 2011. This date is incorrect and the proper date of accrual is November 17th, 2011, the date which the State's "Motion to Confiscate and Destroy" Plaintiffs firearms was denied.

The statute of limitations for a 42 U.S.C. § 1983 claim is set by reference to state law governing personal injury claims. ***Thomas v. City of Chicago, 2009 U.S. Dist. LEXIS 42932 (N.D. Ill. May 21, 2009)***. Under Illinois law, personal injury plaintiffs have a two year statute of limitations. ***Id.*** The accrual date is determined by the federal discovery rule which states the clock begins to run on plaintiff's claim once the plaintiff knows or should have known of the violation. ***Barry Aviation, Inc., v. Land O'Lakes Mun. Airport Comm'n, 377 F.3d 682, 688 (7th Cir. 2004)***. This is a two-step process. ***Hileman v. Maze, 367 F.3d 694, 696 (7th Cir. 2004)***. First the court must determine the injury. ***Id.*** Next, it must determine when the plaintiff could have sued for the injury. ***Id.***

In this case, plaintiff was arrested on May 13th, 2011 for unlawful possession of firearms and eventually acquitted of all charges on September 29th, 2011. At the end of trial, Defendants filed a motion to confiscate and destroy Plaintiff's firearms which was denied on November 17th, 2011. (Exhibits "A" and "B"). Immediately following the denial of this motion, Plaintiff requested the return of his firearms and was denied. Compl., ¶18. During the period between Plaintiff's arrest and the denial of the State's Motion to Confiscate and Destroy, the firearms

legally remained in Defendants' possession as evidence in the underlying criminal case. Compl., ¶ 23. The legal owner of a firearm is not entitled to the return of his or her property until after the firearm is no longer required for evidence or a further investigation.

It follows that the earliest date of accrual of Plaintiff's cause of action is November 17th, 2011, when the court determined the firearms should not be confiscated and destroyed and Plaintiff became aware his constitutional rights were violated by the retention of his firearms after his acquittal of all charges. Thus Defendants' Motion to Dismiss should be denied.

### III. Defendants Incorrectly Argue Plaintiff's Firearms are Contraband Thus Defendants' Motion to Dismiss Should be Denied.

Defendants' argument that Plaintiff's firearms are contraband is misguided. The State previously moved the court to confiscate and destroy Plaintiff's firearms and Defendants' motion was denied. (Exhibits "A" and "B"). If the firearms were truly contraband, the Circuit Court of Cook County would have granted this motion. Further, if Defendants felt the firearms were in fact contraband and that the court's ruling was incorrect, Defendants should have appealed the motion which was denied over a year ago.

Even assuming Plaintiff's firearms are contraband, this has no effect on Plaintiff's ability to bring a deprivation of due process claim.

> In reaching this conclusion, the court also recognized that the importance of such a hearing to the person whose property is seized is not affected by the facial merit or lack of merit of an individual's challenge to the seizure [*188] of their property. Id. at 143 ("the importance of defendants' possessory interest [is not] diminished by the likelihood that they might lose and the County might eventually prevail in forfeiture proceedings"). *Razzano v. County of Nassau, 765 F. Supp. 2d 176, 187-188 (E.D.N.Y. 2011)*

Because whether or not Plaintiff's firearms are contraband has no bearing on the ability to bring a due process claim, Defendants' Motion to Dismiss should be denied.

**IV.    Defendants Incorrectly Argue Plaintiff has Failed to State a Due Process Claim Thus Defendants' Motion to Dismiss Should be Denied.**

Defendants incorrectly assume their post-deprivation "procedure" is adequate to satisfy the due process clause.  However, simply having a procedure does not mean it is adequate under the due process clause of the Fourteenth Amendment.

The due process clause of the Fourteenth Amendment states, "nor shall any State deprive any person of life, liberty, or property, without due process of law." ***Razzano v. County of Nassau,*** *765 F. Supp. 2d 176, 185 (E.D.N.Y. 2011)*.  Due process requires notice to the individual who is being deprived of his or her property and also the provision of a hearing before final deprivation of the property. ***Ford v. Turner,*** *531 A.2d 233, 236 (D.C. 1987)*

Under the due process clause, proper notice requires more than the mere availability of legal actions listed in a statute which allow for the retrieval of seized property.  It is also required that a plaintiff deprived of his or her property be notified of the grounds on which a defendant bases a continued retention of plaintiff's property.

> The availability of various legal actions through which Ford may be able to contest the retention of the alleged firearms does not eliminate the government's obligation to inform her that the Property Clerk intended, for a specified reason, to retain the property taken from her sister's apartment unless she invoked certain procedures to recover it. Indeed, by acknowledging that D.C. Code § 4-157 (1981) or § 16-3701, as well as § 22-3217, may apply, appellees implicitly concede that Ford has not been notified of the legal grounds for the Property Clerk's continued retention of the guns. In effect, therefore, they concede there is no basis, absent a hearing itself, for concluding that the guns at issue are "dangerous" weapons or articles within the meaning of §§ 22-3214 through -3217. ***Ford,*** *531 A.2d at 238-239*

Further, notice must apprise the person being deprived of his or her property in a manner which prepares this person for any hearing regarding return or retention of the property.

At a minimum, she was entitled to notice that certain property had been seized, that the District sought to retain the property pursuant to specified authority, and that a claimant could take particular steps to challenge the District's action. See Willis v. United States, 787 F.2d 1089, 1093 (7th Cir. 1986). ***Ford, 531 A.2d at 237-238***

Once notice has been established, courts still must determine the sufficiency of the disputed process. In a case involving wrongful deprivation of a plaintiff's property by a government policy, the court determines sufficiency of process by applying the test established in *Mathews v. Eldridge*.

Under the *Mathews* test, courts weigh: (1) the private interest affected by the state action; (2) the risk of erroneous deprivation through the procedures used and the value of additional procedural safeguards; and (3) the government's interest in taking the challenged action. ***Mathews v. Eldridge, 424 U.S. 319, 335 (U.S. 1976)***.

Post deprivation hearings are generally not enough to prevent the risk of erroneous deprivation, but can be sufficient in firearm cases due to the potentially dangerous nature of firearms. ***Razzano, 765 F. Supp. 2d at 186***. The court in *Razzano* held the following post deprivation procedure satisfies the due process clause in gun seizure and retention cases:

First, the post-deprivation hearing must be held before a neutral decision-maker. Second, consistent with the Second Circuit's rulings in the *McClendon* trio, the right to a prompt post-deprivation hearing only applies to seized longarms that are not (1) the fruit of a crime, (2) an instrument of crime, (3) evidence of a crime, (4) contraband, or (5) barred by court order from being possessed by the person from whom they were confiscated. Third, at the hearing, Nassau County shall have the burden of showing that it is likely to succeed in court on a cause of action—presumably forfeiture or a cause of action seeking an order of protection, although the Court does not limit Nassau County to these theories—to maintain possession of the seized longarms. Fourth, if the person deprived of longarms prevails at the hearing, the longarms must be returned, barring an order to the contrary from a court to whom that finding is appealed. If, by contrast, Nassau County prevails at the hearing, Nassau County must timely commence a proceeding by which it seeks to maintain possession of the longarms in question. ***Razzano, 765 F. Supp. 2d at 191***

Finally, placing the burden of going forward on the individual who was dispossessed of his or her property creates too great a risk of erroneous deprivation. *Razzano, 765 F. Supp. 2d at 188-189*. This is because placing the burden on the plaintiff requires plaintiff to expend a great deal of time and money instituting legal actions to regain possession of seized property. The court in *Razzano* correctly states this burden must rest with the state.

> The concern over erroneous deprivation with respect to the Article 78 proceeding is primarily temporal. Analogous to the discussion in Canavan, 1 N.Y.3d at 142, a state case resolving the ownership of confiscated longarms is likely to take a substantial amount of time. Further, placing the burden of going forward on the person whose property was taken is even more onerous, as it requires that such person give up not only time, but also money to initiate a lawsuit and retain an attorney. [*189] In this regard, the Court cites with approval the statement of one of the judges cited in McClendon, who noted, "*It seems to me a shocking thing that our police can seize a citizen's property and then when he seeks to get it back challenge him to prove his title to the satisfaction of a jury*." McClendon, 460 F.2d at 113, n.4 (quoting Gonzalez v. Leuci, 120 (85) N.Y.L.J., Nov. 1, 1948, at 993, col. 4, quoted by Judge Bryan in United States v. Herzfeld, 271 F. Supp. 185, 189 (S.D.N.Y. 1967)). In addition, the Court is persuaded by the Canavan court's admonition that there is a risk of wrongful deprivation in requiring a lengthy process to return property even where the person whose property was taken does not appear to have a strong case. Canavan, 1 N.Y.3d at 143 ("The right to be heard, however, does not depend upon an advance showing that one will surely prevail at the hearing" (internal quotations omitted)). Thus, in the Court's view, and Article 78 proceeding also presents a significant risk of erroneous deprivation. *Razzano, 765 F. Supp. 2d at 188-189* (emphasis added)

In this case, there is undoubtedly a government taking of Plaintiff's property. Plaintiff's guns were seized by the Chicago Police Department. Compl., ¶17. Defendants are still in possession of Plaintiff's firearms even though Plaintiff was acquitted of all charges. Compl., ¶10 and 23. This deprivation of property occurred due to a government process despite Defendants' allegations to the contrary. In *Razzano*, the court found that because the firearms were taken in an arrest and held for prosecution meant that they were taken pursuant to a government policy. *Razzano, 765 F. Supp. 2d at 186*. Similarly, here the Defendants claim Plaintiff's firearms were confiscated and retained pursuant to an arrest and prosecution. (Defs.' Mem. of Law in Supp. of

its Mot. to Dismiss Pl.'s Compl., at 6-7). Thus, it cannot be argued that Plaintiff was deprived of his firearms in this case by anything other than Defendants' policy.

Next, Plaintiff was not provided with sufficient notice or a proper hearing before the final deprivation of his firearms. He was not made aware of the procedure Defendants suggest he utilize. Compl., ¶30. Just as in *Ford*, there is no constructive notice and the mere availability of legal actions in a statute which Plaintiff could take to regain possession of his firearms does not relieve Defendants of the duty to inform Plaintiff they intended to retain his firearms for a particular reason, or negate the need for a hearing.

Applying the *Mathews* test to this case, Plaintiff was not given sufficient due process. First, Plaintiff clearly has a property interest in his own firearms similar to the court's finding in *Razzano*. In that case, the court noted that the plaintiff's property interest affected by the state's action was that of the ownership of his firearms. ***Razzano, 765 F. Supp. 2d at 188.***

Second, there is a great risk of erroneous deprivation under Defendants' current policy. While a post-deprivation hearing would likely be sufficient in this case, none was given despite the court's finding in the underlying criminal case that the firearms should not be confiscated or destroyed. (Exhibits "A" and "B"). Plaintiff made a request for his firearms and has been denied, but no reason was given for this denial. Compl., ¶ 18. Similarly to *Razzano*, Defendants here point to the legal actions Plaintiff could take to regain possession of his firearms. However, Defendants miss the temporal and monetary nature of their erroneous deprivation of Plaintiff's property. Just as the court found in *Razzanno*, in this case Plaintiff is forced to expend a great deal of time and money in order to initiate a lawsuit and hire an attorney in order to regain possession of his property. This is not due process of law.

Third, while there is arguably a public interest in confiscating firearms, the Defendants' in this case have not sought a protective order against Plaintiff, and Plaintiff could go out and purchase new firearms if he wished similar to the defendant in *Razzano*. ***Razzano*, 765 F. Supp. 2d at 189**. If there was truly a public safety concern, Defendants would have attempted to make it impossible for Plaintiff to obtain new firearms in addition to those in Defendants' possession.

If after applying the *Mathews* test factors, a court finds the process insufficient, it must then weigh the benefits of additional process against the cost to the government. ***Razzano*, 765 F. Supp. 2d at 189**. It follows from this application of the *Mathews* test that alternative procedural safeguards are justified in this case. First a prompt post-deprivation due process hearing should be conducted. This would be no different than the motion hearing conducted to decide whether Plaintiff's firearms should be confiscated and destroyed, except Plaintiff would have his weapons returned upon a finding that the firearms should not be confiscated and destroyed. Next, Defendants should be required to bear the burden of proving they have a right to retain Plaintiff's property. Placing this burden on the Plaintiff in this case creates a due process violation because it requires he expend a great deal of time and money instituting legal battles to reclaim property that is rightfully his. If Plaintiff is successful, Defendants should return Plaintiff's firearms as Defendants would no longer have a valid ground to retain the property.

Defendants have not made any claim that instituting these additional processes would be overly costly for the government while Plaintiff presents evidence of the value of this additional procedure in eliminating the chance of an erroneous deprivation of property.

For the foregoing reasons, Plaintiff's right to due process of law has been violated and the Defendants' Motion to Dismiss should be denied.

## V.    State Law Remedies Are Inadequate Thus This Court Has Jurisdiction Over This Controversy and Defendants' Motion to Dismiss Should be Denied.

Defendants incorrectly assume that because of available state law remedies, such as replevin, that Plaintiff cannot assert a due process violation, and thus this court does not have jurisdiction over Plaintiff's claims.

While state law remedies are acceptable for tortious or negligent loss of property, state law remedies are not adequate to address a deprivation of property resulting from an established state policy or custom.

> *Parratt* concerned conduct that ordinarily would be subject to state tort law. The Supreme Court, therefore, was understandably concerned about elevating straight forward tort claims into lawsuits of constitutional dimension. Here, in contrast, Ford complains about the procedures -- or, more accurately, about the lack of procedures -- established by the government. Appellees' argument under *Parratt*, therefore, would be germane only if Ford were claiming that appellees had negligently misplaced or destroyed the alleged firearms sometime after they had been taken into custody -- and after appellees had given Ford adequate notice of the seizure and of her right to a hearing. ***Ford v. Turner, 531 A.2d 233, 239 (D.C. 1987)***

As stated in the section above, this case involves the failure of notice, a Fourteenth Amendment violation, and thus the availability of state law claims is irrelevant.

> The court in *Butler* further held that the Fourteenth Amendment required sufficient notice of this policy, and that a lack of notice "makes the availability of replevin, or any other secondary New York remedy, irrelevant". Id. at 703. *Alexandre* echoed this finding, and also noted again that "'the existence of independent state relief does not defeat a Section 1983 claim where the deprivation complained of results from the operation of established state procedures.'" 140 F.3d at 411 (quoting *Butler*, 896 F.2d at 700). ***Razzano v. County of Nassau, 765 F. Supp. 2d 176, 187 (E.D.N.Y. 2011)***

In this case, Plaintiff does not allege a negligent or tortious deprivation of his firearms. Instead Plaintiff alleges his firearms were taken as a result of Defendants' policy and custom. Compl., ¶20.

It follows that Defendants' suggestion that Plaintiff has not suffered the alleged due process violation because of the existence of state law actions is incorrect and thus this court has proper jurisdiction over Plaintiff's federal due process claim.

## VI. **Defendants' Incorrectly Argue Chicago Police Superintendent Gary McCarthy is an Improper Party**

Finally, Defendants' argue that Mr. McCarthy is an improper party, however this is incorrect. Mr. McCarthy is not a superfluous party because Plaintiff alleges in his complaint in paragraphs 27-32 that Mr. McCarthy is responsible for carrying out or instituting a policy or custom that is in violation of Plaintiff's constitutional rights. Compl., ¶27-32. Plaintiff should be allowed to reach the discovery stage in order to establish key ingredients of his claim.

In order to bring a claim against an individual defendant for a violation of constitutional rights via an unconstitutional policy or custom enacted by a governmental body, a plaintiff must show this individual defendant's involvement in the policy or custom.

> Where the plaintiff has brought claims against defendants in their individual, as opposed to official, capacities, the plaintiff must show that the defendants were personally involved in the alleged constitutional deprivation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). ***Brown v. Ghosh, 2010 U.S. Dist. LEXIS 103992, at 15 (N.D. Ill. Sept. 28, 2010)***

This is impossible to do for all practical purposes without allowing a plaintiff discovery. The Supreme Court held in *Herbert v. Lando* that allowing a plaintiff discovery is essential when a plaintiff must show the thoughts, opinions, and conclusions of the defendant in order to bring a successful claim.

> As respondents would have it, the defendant's reckless disregard of the truth, a critical element, could not be shown by direct evidence through inquiry into the thoughts, opinions, and conclusions of the publisher, but could be proved only by objective evidence from which the ultimate fact could be inferred. It may be that plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself, but the relevance of answers to such inquiries, which the District Court recognized and the Court of Appeals did not deny, can

hardly be doubted. To erect an impenetrable barrier to the plaintiff's use of such evidence on his side of the case is a matter of some substance, particularly when defendants themselves are prone to assert their good-faith belief in the truth of their publications, and libel plaintiffs are required to prove knowing or reckless falsehood with "convincing clarity." *New York Times Co. v. Sullivan*, 376 U.S., at 285-286. ***Herbert v. Lando,*** *441 U.S. 153, 170 (U.S. 1979)*

While *Herbert* involved a defamation claim, the Supreme Court's analysis holds true in this case. Without allowing Plaintiff discovery, the involvement in establishing and keeping the unconstitutional policy, and the intent, opinions, and conclusions of Mr. McCarthy, will never be known. Plaintiff's efforts to determine Mr. McCarthy's exact involvement with the unconstitutional actions of Defendants would be impossible. The Supreme Court's reasoning is particularly relevant here as Mr. McCarthy will likely assert a good-faith belief that the policy or custom enacted and carried out by Defendants is in fact constitutional. The only way for Plaintiff to challenge this assertion is to utilize discovery to uncover the true opinions, conclusions, and involvement of Mr. McCarthy.

For these reasons, it would be unjust to dismiss the claims against Mr. McCarthy at this stage of the case. Plaintiff should be allowed a means to challenge Defendants' assertion that any violation of Plaintiff's constitutional rights has been done in good faith. It follows, Defendants' Motion to Dismiss Mr. McCarthy as a proper party to this litigation should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Complaint.

Respectfully submitted,


    /S/  Joel A. Brodsky
Joel A. Brodsky
Attorney for Plaintiff

Joel A. Brodsky
Attorney for Plaintiff
8 S. Michigan Ave.
Suite 3200
Chicago Illinois 60603
(312) 541-7000

# <u>CERTIFICATE OF SERVICE</u>

To:     Rebecca Hirsch
        City of Chicago, Dept. Of Law
        30 N. LaSalle St., Suite 1230
        Chicago IL 60602
        Rebecca.Hirsch@cityof chicago.org


The undersigned attorney certifies that the following statements set forth in this instrument are true and correct:  that I caused to be served the above and foregoing Notice of Motion Plaintiff's <u>Response To Defendants Motion To Dismiss</u> via the U.S. District Court's Electronic Filing System to all parties of record on the 18th day of October 2013 before 12:00 midnight.


                              Plaintiff **Lloyd Turentine**


                              By: _____/s/ Joel A. Brodsky
                                       One Of His Attorneys


**Joel A. Brodsky**
Attorney for **Lloyd Turentine**
8 S. Michigan Ave.
Suite 3200
Chicago Illinois 60603
(312) 541-7000