# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Lloyd Turentine, | ) | |
| | ) | No. 13 C 05218 |
| Plaintiff, | ) | |
| | ) | Hon. Sara L. Ellis |
| v. | ) | |
| | ) | |
| City of Chicago, City of Chicago Department | ) | |
| of Police and Chicago Police Superintendent | ) | |
| Garry McCarthy. | ) | |
| Defendants. | ) | |

## DEFENDANT'S REPLY
## IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant the City of Chicago (the "City"or "Defendant"), by and through its attorney, Stephen R. Patton, Corporation Counsel for the City of Chicago, hereby files this reply in support of its motion dismiss Plaintiff's Complaint ("Complaint" or "Compl.").

**I.    Plaintiff Cannot Save His Claims From Being Barred By The Statute of Limitations.**

As the City set forth in its motion, because Plaintiff's claims arise from the alleged unlawful arrest and seizure of his firearms which occurred more than two years before he filed suit, his claims are time-barred. *See* City Mem., pp. 3-5;[1] *see also See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (citations omitted) (statute of limitations issue may be resolved definitively on face of complaint when plaintiff pleads "too much" and admits ingredients of statute of limitations defense). Plaintiff now retreats from his own allegations and attempts to recast the case as one about the City's "retention" of the firearms rather than their "seizure." Pl.'s Resp. at 1. Plaintiff's efforts to save his claims from the obvious reach of the

---

[1] The only claim arguably surviving the applicable statute of limitations is Plaintiff's state court action for replevin in Count III. However, as the City previously explained, the Court should decline to exercise supplemental jurisdiction over that claim.

applicable limitations period fails for several reasons.

### A. Plaintiff's claims accrued at the time of the seizure of his firearms.

Plaintiff's claims accrued when he knew, or should have known, that his constitutional rights were violated. *See* City Mem., p. 4, and cases cited therein. For claims arising out of unlawful arrests or illegal searches or seizures, there is a bright-line rule that the claims accrue immediately at the time of arrest or seizure. *See Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010) (citing *Wallace v. City of Chicago*, 440 F.3d 421, 425-28 (7th Cir. 2006)). For other claims, including some due process claims, the line is less clear and the court must engage in a "fact-intensive inquiry, in which both the surrounding circumstances and the claims plaintiff [himself] is trying to raise are critical." *Hileman v. Maze*, 367 F.3d 694, 697 (7th Cir. 2004).

In an attempt to avoid the clearly applicable bright-line rule, Plaintiff tries to disassociate his claims from the "seizure" of the firearms and instead frames his injury solely as pertaining to the City's continued retention of the firearms after they were seized. But his own allegations establish that he believed the *confiscation* of the firearms—and not just their subsequent retention—was wrongful because of the lack of procedures for him to reclaim the firearms.[2] Plaintiff specifically, and repeatedly, alleges that "[t]he Chicago Police Defendant's *confiscation* of the firearms violates [his] Due Process Rights since no mechanism or procedure exists for the return of his firearms." Compl*.*, ¶ 19 (emphasis added); *see also id.* ¶¶ 17, 25, 27, 28, 29. Based on his own allegations, therefore, Plaintiff could have brought suit for his due process injury from the day the CPD seized

---

[2] Moreover, as discussed in more detail below, the same chapter of the Municipal Code for which Plaintiff was arrested for violating permits the City to confiscate and keep the firearms as contraband; thus, Plaintiff knew, or should have known, from the day he was arrested that he could not reclaim the firearms.

2

his firearms.[3] *See Woods v. City of Rockford, Ill.*, No. 08-2638, 367 Fed. App'x 674, 678 (7th Cir. 2010) (unpublished) (finding that plaintiff's due process claim for deprivation of liquor license accrued at time license was revoked without a pre-deprivation hearing, not on later date when City "announced that it no longer saw a need for the contemplated [post-deprivation] liquor hearing"); *Johnson v. Cullen*, 925 F. Supp. 244, 50 (D. Del. 1996) (concluding that plaintiffs' claims, including due process claim, accrued at time of seizure of property because plaintiffs "knew immediately (or at least fairly immediately) that the seizure occurred and that the process of obtaining the writ [of seizure] may have been infirm").

Plaintiff conveniently ignores his multiple allegations regarding the "wrongful confiscation" of his firearms, and now argues that the City had a right to retain the firearms until the disposition of Plaintiff's criminal case and that Plaintiff "became aware his constitutional rights were violated by the retention of his firearms after his acquittal of all charges." Pl.'s Resp., pp. 6-7. But Plaintiff cannot amend, much less contradict, his Complaint through subsequent briefing. *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Plaintiff explicitly claims throughout his Complaint that the seizure of his firearms was wrongful from the day they were confiscated by the CPD. Compl. ¶¶ 17, 19; 27-29. *Cf. McDonald v. White*, No. 11-2406, 465 Fed. App'x 544, 548 (7th Cir. Feb. 15, 2012) (unpublished) ("McDonald should have known that he was injured in 2005, when, he alleges, Will County was required to, but did not, return bail bond money

---

[3] This is not to say that Plaintiff's Fourth Amendment claim and due process claims are the same; his Fourth Amendment claim is based on the lack of probable cause to seize the firearms, Compl. ¶ 17, while his due process claim is based on the lack of procedures to reclaim the firearms, *id.* ¶ 19. However, Plaintiff's allegations establish that the confiscation of the firearms underlies both claims, which is the relevant inquiry for determining the applicable limitations period.

to him."). In fact, prior to his arrest and the seizure of his weapons, Plaintiff told CPD officers that he was permitted to lawfully possess the firearms. Comp., ¶ 16. Thus, his contention that he did not know his rights were violated until November 17, 2011, must be rejected as contradicted by the Complaint.

Moreover, the discussion regarding the denial of the State's motion to confiscate and destroy is a red herring; as detailed in the City's initial memorandum, Municipal Code permits the City to confiscate and destroy Plaintiff's firearms regardless of such an order. City Mem., pp. 6-8. In sum, the facts and circumstances as alleged by Plaintiff establish that he knew, or should have known, that his rights were violated when the CPD arrested him and seized his firearms on May 13, 2011.

**B.     The City's retention of Plaintiff's firearms is not a continuing violation.**

Plaintiff's argument that his action is timely because he has alleged a "continuing violation" also fails. Pl.'s Resp., pp. 2-6. The continuing violation doctrine, which delays the accrual of a claim, applies when a tort involves injuries that "are the consequence of a numerous and continuous series of events," *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001), or when "deeds that are not themselves violations of law . . . add up" and become actionable, *Turley v. Rednour*, 729 F.3d 645, 654 (7th Cir. 2013) (Easterbrook, J., concurring).[4] The purpose of the doctrine is to delay the accrual of a claim when a plaintiff "could not reasonably be expected to perceive the alleged violation before the limitations period has run, or when the violation only becomes apparent in light of later events." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).

Neither of these circumstances apply here. The City's continued retention of the firearms is

---

[4] While Plaintiff cites state-law cases in support of his "continuing violation" argument, the doctrine is one of accrual, *Heard,* 253 F.3d at 319, and therefore governed by federal common law, *Wallace*, 549 U.S. at 387.

not "a fresh infliction" of harm each day, *Heard*, 253 F.3d at 318, nor an injury resulting from the "cumulative impact" of a series of individual acts, *Turley*, 729 F.3d at 651. Instead, Plaintiff has only alleged a single act—the seizure of his firearms without probable cause or a procedure to secure their return—that has continuing consequences—the City's continued possession of the firearms. *See Dilberti v. United States*, 817 F.2d 1259, 1264 (7th Cir. 1987) (citations omitted) ("[H]e has merely alleged a continuing adverse consequence of prior unlawful conduct."). And a discrete act that causes continuing harm is not a continuing violation and does not extend the statute of limitations period. *See Savory,* 469 F.3d at 672-73 (holding that prisoner's continued lack of access to physical evidence—and the City of Peoria's continued refusal to release the physical evidence for testing—was not a continuing violation but rather the "natural consequence of the discrete act that occurred when Peoria first denied access to the evidence") (citation omitted); *see also Frazier v. U.S. Bank Nat. Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *6 (N.D. Ill. Mar. 29, 2013) (rejecting the plaintiff's argument that continuing violation doctrine applied where the plaintiff "was effectively locked or kept out of his home . . . by [the defendants]" over a period of time because "mere 'continuation' of challenged conduct is not sufficient to invoke the doctrine"); *Johnson*, 925 F. Supp. at 248-50 ("Although plaintiffs were deprived of their property until it was returned to them, that was the constitutional ill effect of the original act of seizure. It was not a series of repetitive or ongoing violation.").

Plaintiff's allegations that the violation of his constitutional rights occurred pursuant to a City "policy" do not render his action timely for the same reason: he has not alleged that the policy "brings with it a fresh violation each day." *Savory*, 469 F.3d at 672. To the extent that Plaintiff alleges a policy claim under *Monell v. Department of Social Services of City of New York*, 436 U.S.

5

658, 690-91 (1978), such a claim must be predicated on an underlying constitutional violation. *Schor v. City of Chicago*, 576 F.3d 775, 779 (2009). Thus, any *Monell* claim is timely only to the extent Plaintiff's underlying Fourth Amendment or due process claims are timely. *See Walden v. City of Chicago*, 755 F. Supp. 2d 942, 958 (N.D. Ill. 2010) ("[B]ecause a *Monell* claim is premised on an underlying constitutional violation . . . the claim can go forward when premised on claims that have been timely filed.") (citations omitted); *Hobley v. Burge*, No. 03 C 3678, 2004 WL 2658075, at *8 (N.D. Ill. Oct. 13, 2004) ("[W]e conclude that to the extent Hobley's *Monell* claim is based on [the time-barred] excessive force or failure to intervene to prevent excessive force, it is thus time-barred."). The cases Plaintiff cites in support of his theory are inapposite and do not save his claims. *See, e.g., Woodward v. Correctional Medical Servs.*, 368 F.3d 917, 927 (7th Cir. 2004) (discussing how to establish *Monell* policy claim, not the *timeliness* of such a claim).

Accordingly, because Plaintiff's claims in Counts I, II, IV, and V are barred by the statute of limitations as evidenced on the face of his Complaint, the Court should dismiss these claims with prejudice,[5] and decline to exercise jurisdiction over Plaintiff's replevin claim in Count III.

## II. Because Plaintiff Has No Property Interest In Assault Weapons, His Due Process Claim Fails As A Matter of Law.

It is axiomatic that without first establishing a property interest, a plaintiff has no due process claim. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985) (court must first determine whether plaintiff has been deprived of protected interest; only then must court determine what process is due); *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996) (same). And it

---

[5] While the Seventh Circuit has signaled that technically, "when a complaint shows that the time for litigation has passed," judgment on the pleadings "should" be entered under Fed. R. Civ . P. 12(c) rather than under Rule 12(b)(6), *see Leavell v. Kieffer*, 189 F.3d 492, 494–95 (7th Cir.1999), "the practical effect is the same," and the court may convert the City's motion and grant relief pursuant to Rule 12(c). *Id*.

is also well-settled that there is no property interest in items that are illegal to possess under either state or federal law. *See, e.g.*, *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 699–700 (1965) (courts will not entertain claim contesting confiscation of contraband *per se* because "one cannot have a property right in that which is not subject to legal possession"); *United States v. Droganes*, 728 F.3d 580, 592 (6th Cir. 2013) (individuals have no property interest in contraband), citing *Ziffrin, Inc. v. Reeves,* 308 U.S. 132, 140 (1939); *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1213 (10th Cir. 2001) (same); *Lyon v. Farrier,* 730 F.2d 525, 527 (8th Cir.1984) (same); *Wofford v. Celani*, No. 11 C 3543, 2013 WL 315744, *9 (N.D. Ill. Jan. 28, 2013) (because it was illegal for convicted felon to possess bulletproof vest under federal law, claimant had no due process claim for its retrieval). Because Plaintiff's firearms are assault weapons for which he has no legal right to possess, his claim should be dismissed on this basis alone.

Plaintiff responds that the City's argument that his firearms are contraband "is misguided" (Resp., p. 7), but tellingly, he does not dispute that they are, in fact, contraband. Nor could he. As the City set forth in its motion, Plaintiff's own allegations admit to this fact: the descriptions he provides of his weapons in Paragraph 11 of his Complaint fall clearly under the City's definition of assault weapons, which are *per se* illegal contraband. *See* City's Mem., pp. 6-7; *see also* Chicago Mun. Code § 8-20-010 Assault Weapon Definition (3)(ii) and (iv)). Instead, Plaintiff suggests that the circuit court's refusal to grant the City and State's motion to confiscate and destroy in his criminal proceeding translates to a finding that the firearms are not contraband. Resp., p. 7. But there was no such finding. The state court simply refused to give a judicial basis to destroy the weapons; it made *no* findings as to whether the weapons were contraband under the City's ordinance. Furthermore, because the City is authorized under Chicago Mun. Code § 8-20-035 to seize and

destroy contraband weapons *without* judicial order, the circuit court's order is irrelevant.

Plaintiff relies on a district court case from New York, *Razzano v. County of Nassau*, 765 F. Supp.2d 176 (E.D.N.Y. 2011), for the proposition that "whether or not Plaintiff's firearms are contraband has no bearing on his ability to bring a due process claim." Resp., p. 7. Nothing in *Razzano* supports this claim. Indeed, Plaintiff ignores the actual facts of *Razzano*, and instead simply block-quotes long portions of the opinion entirely out of context. In *Razzano*, the plaintiff, a civil activist and member of the Minuteman Civil Defense Corps, had allegedly made numerous threatening phone calls and visits to a state representative over immigration issues. 765 F. Supp. 2d at 179-80. Police officers went to his house to investigate and, after determining that he was unstable and a potential threat, confiscated fifteen handguns that were legally registered to him, as well as nine longarms for which no license or registration was required. *Id*. at 181. His handgun license was then revoked. *Id*. Plaintiff asked for return of his longarms, but was told that he could get them back only if he: (1) had his handgun license re-instated; or (2) he obtained a court order directing their return. *Id*. at 185. Plaintiff then brought suit alleging due process and conversion claims not over his confiscated handguns, or the revocation of his license, but solely for the return of his confiscated longarms. *Id*.

Unlike here, there was no question that the plaintiff in *Razzano* had a legal property interest in his longarms. *See Razzano*, 765 F. Supp.2d at 188 ("all parties agree that Razzano has a property interest in his longarms"). And the language Plaintiff relies on to support his claim that it is irrelevant whether or not his firearms are contraband says no such thing. *See* Pl.'s Resp. at 7 (quoting *Razzano* at 187-88). Instead, that language merely recognizes the noncontroversial principle that the property interest an individual possesses does not diminish even if he ultimately

8

loses a seizure claim; it says nothing about whether or not an individual has a property interest in the items seized *to begin with*. Indeed, the *Razzano* court specifically stated that "the right to a prompt post-deprivation hearing only applies to seized longarms that are not . . . contraband." 765 F. Supp. 2d at 188.

Thus, because Plaintiff's own pleadings establish that his firearms are contraband, and because there is no cognizable property interest in contraband, his due process claim fails as a matter of law and should be dismissed.

### III. Plaintiff Was Given Adequate Due Process.

Finally, as the City explained in its motion, even assuming that Plaintiff's firearms were not contraband, he was afforded more than adequate due process because: (1) the City has published procedures regarding retrieval of seized weapons; (2) Plaintiff had a full and fair opportunity to be heard during his state court criminal proceeding; and (3) other post-deprivation remedies such as state court replevin and conversion actions are available. *See* City Mem., pp. 8-10. Plaintiff's only response to the City's argument is to again rely on factually distinguishable cases from other jurisdictions, and can be easily dismissed.

Citing *Razzano*, Plaintiff argues that requiring him to seek a state court remedy or to otherwise obtain a court order for the return of his firearms is too costly a burden and it runs "too great a risk of erroneous deprivation." Pl.'s Resp., pp. 9-10. But Plaintiff misses the point. In discussing the risk of an erroneous deprivation, the *Razzano* court focused on the county's argument that it was adequate procedure to allow him to regain possession of his *longarms* if he successfully brought a claim to reinstate his license for the *handguns*. It imposed too high of a burden, the court reasoned, to make the return of his longarms (which did not require a license) contingent on the

9

plaintiff proving that he was entitled to return of his handguns (which did require a license). *Razzano*, 765 F. Supp. 2d at 188. No such issues are present here. Furthermore, the *Razzano* court took issue with the county's procedures because there was simply no other method for Plaintiff to obtain his firearms other than to initiate a lawsuit of his own. Again, here, there are no such issues: Plaintiff was already before a state court tribunal and, just as the City and State moved for an order to confiscate and destroy, Plaintiff could have requested an order for return of his firearms. Moreover, the City has an additional procedure for the return of seized weapons without obtaining judicial relief. As the City explained, Plaintiff could have requested a Property Release Order, which is given to the property owner after he has shown that: (1) he has a valid FOID card and firearm registration (unless he shows he is exempt); (2) the weapon is not contraband; (3) a court of law is not expected to determine the disposition of the firearm; and (4) there are no outstanding warrants or other criminal history which would preclude the individual from legally possessing the firearm. City Mem., p. 9. [6] Plaintiff does not allege that he attempted to follow these procedures.

Finally, Plaintiff relies on yet another inapposite case, *Ford v. Turner*, 531 A.2d 233 (D.C. 1987), to argue that post-deprivation state court remedies, such as conversion or replevin, are inadequate because "this case involves the failure of notice... [.]" Pl.'s Resp., p. 13. In *Ford*, the plaintiff was the administrator of her deceased sister's estate, from which the police had seized seven firearms. *Ford*, 531 A.2d at 234-35. The plaintiff was not told, and did not become aware, of the seizure until well after the statutory 30-day deadline to request a hearing had ended. *Id*. Thus,

---

[6] Also relying on *Razzano*, Plaintiff claims that the City has a diminished public safety interest in keeping his firearms since it has not sought a protective order against him, and he is free to go out and purchase new weapons. Pl.'s Resp., p. 12. But the *Razzano* court pointed this issue out only because the public safety concern there was that the *plaintiff himself* was considered a threat, not because, like here, his firearms were seized because they were unregisterable assault weapons.

because "[a]t a minimum, she was entitled to notice that certain property had been seized" and the basis for the seizure, the defendants had violated her due process rights. *Id*. at 239. Significantly, the court found that a state court action for replevin would be inadequate because the plaintiff was challenging the complete lack of notice under the state court procedures. *Id*. In contrast, Plaintiff here certainly had notice of the seizure of his firearms, and the basis for the seizure, as well as an opportunity to be heard throughout his state court prosecution. Thus, even assuming his firearms were not contraband, Plaintiff cannot claim that he was denied adequate notice and an opportunity to be heard.

### III. Plaintiff's Claims Against Superintendent McCarthy Must Be Dismissed.

The City moved to dismiss Defendant McCarthy because Plaintiff alleged no personal involvement by him with Plaintiff's arrest or the seizure of his firearms. City Mem., pp. 10-11. In response, Plaintiff argues broadly that "Mr. McCarthy is responsible for carrying out or instituting a policy or custom," and that he should therefore be allowed "to reach the discovery stage in order to establish key ingredients of his claim." Pl. Resp., p. 14. Just as he did with the statute of limitations, however, Plaintiff confuses the principle of establishing individual liability for a constitutional violation with establishing municipal policy against the City for a policy or custom.

Plaintiff's allegations against Defendant McCarthy, that he carried out a policy or custom, are the very essence of a claim against an individual acting in his *official* capacity. And, despite Plaintiff's numerous repeated remarks, the City has not argued that Plaintiff failed to properly plead a custom or policy such that no *Monell* liability could attach against the City. Plaintiff has not named any of the individual police officers involved in his arrest , nor linked any conduct by Defendant McCarthy to his arrest or the seizure of his weapons. Thus, while the City has shown that Plaintiff

has failed to state a claim for numerous other reasons, to the extent he has stated a claim, it lies against the City only. *See, e.g.*, *Kelly v. Municipal Courts of Marion Cty.*, 97 F.3d 902, 909 (7th Cir. 1996) (individual liability under §1983 requires finding that defendant caused deprivation at issue).

Furthermore, Plaintiff's response is rooted in an improper plea to let his claims against Defendant McCarthy survive so that he has an opportunity to conduct discovery into Defendant McCarthy's intentions and opinions. Pl.'s Resp., pp. 14-15. This request serves only to highlight Plaintiff's inability to state a cause of action against him and is, of course, impermissible. *See, e.g., E.E.O.C. v. Harvey L. Walner & Assoc.*, 91 F.3d 963, 972 (7th Cir. 1996) (insufficient complaint may not be used as vehicle to obtain discovery to determine additional instances of discrimination); *Sprague v. Brook*, 149 F.R.D. 575, 577 (N.D. Ill. 1993) (complaint must first satisfy grounds for relief before discovery permitted). Plaintiff cites *Herbert v. Lando*, 441 U.S. 153, 170 (1979) to support his position, but to no avail. *Herbert* involved whether a defendant publisher in a defamation suit could claim absolute First Amendment privilege from answering deposition questions about what he knew to be true. 441 U.S. at 160-61. Because the plaintiff could prevail only if he showed "actual malice," the Supreme Court held that "according an absolute privilege to the editorial process of a media defendant in a libel case is not required." *Id*. at 169. *Herbert* has no application here, where Plaintiff is trying to use the discovery process to determine, at the outset, whether Defendant McCarthy had any involvement with the deprivation of his rights.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its motion and dismiss Counts I, II, IV and V with prejudice, and dismiss Count III without prejudice to Plaintiff's right to seek redress in state court, and for all other relief the Court deems just.

| | |
|---|---|
| Mardell Nereim<br>Rebecca Hirsch<br>Mary Eileen Cunniff Wells<br>City of Chicago Dept. of Law<br>30 N. LaSalle St., Suite 1230<br>Chicago, Illinois 60602<br>312-742-0260<br><br>November 27, 2013 | Respectfully submitted,<br><br><br>Stephen R. Patton, Corporation Counsel<br>for the City of Chicago<br><br>By: /s/Rebecca Hirsch<br>      Assistant Corporation Counsel |

13

## CERTIFICATE OF SERVICE

I, Rebecca Hirsch, an attorney, certify that on this 27th day of November, 2013, I caused the foregoing **Defendant City of Chicago's Reply In Support of Motion to Dismiss Plaintiff's Complaint** to be served by electronic case filing (ECF) on the following counsel:

Joel A. Brodsky
8 S. Michigan Ave., Suite 3200
Chicago IL 60603
(312) 541-7000
jbrodsky@joelbrodskylaw.com


                                        /s/ Rebecca Hirsch

14